Curtis, J. (dissenting).
The plaintiff alleges in his complaint, that being chamberlain of the city of New York, and empowered by the act of April 17, 1866, to appoint a deputy chamberlain, he in May, 1872, appointed Walter B. Palmer such deputy, who thereupon took the office, gave the required security, entered upon the duties of the office, and has since continued to hold the office and discharge its duties. He further alleges, that the defendant has intruded upon and attempted to enter into and take possession of that office, but that the plaintiff has refused to recognize him as deputy chamberlain, and denies that the defendant is lawfully appointed, and avers that such intrusion of the defendant is calculated to produce confusion in the city and county treasuries and increase the responsibility of the plaintiff, and jeopard the receipt and enjoyment by the plaintiff of the proper emoluments of his office. The plaintiff asks that the defendant be restrained from exercising any of the powers or performing any of the duties of the office, and that in the meantime, and until further order of the court, the defendant be enjoined from any intrusion into the office, and from exercising any powers or performing any duties appertaining thereto.
The defendant by his answer avers that the plaintiff *26 had' no power to appoint Walter B. Palmer deputy chamberlain; that so much of the act passed April 17, 1866, as authorized the chamberlain of the city of Mew York to appoint a deputy chamberlain was repealed by the act passed. April 5, 1870, which conferred on the comptroller of the city of Mew York the power to make such appointment, and that in accordance therewith the defendant was, on the 6th day of January, 1873, duly appointed by such comptroller to the office of deputy chamberlain, and was duly qualified as such.
The title to the office cannot be tried in this action. The question that arises on the appeal from the order at Special Term is, whether the act of April 17, 1866, by which the chamberlain was authorized to appoint the deputy chamberlain, was repealed by the act of April 5, 1870.
The latter contains the following provisions :
“§ 33. The finance department shall have control of all the fiscal concerns of the corporation and of the appropriations Inade for carrying on the business of the corporation. It shall prescribe the forms of keeping and rendering all city accounts, and the manner in which all salaries shall be drawn, and the mode by which all creditors, officers, and employés of the corporation shall be paid.”
“§ 34. All accounts rendered to or kept in the other departments shall be subject to the inspection and revision of the officers of this department, and it shall settle and adjust all claims in favor of' or against the corporation, and all accounts in which the corporation is concerned as debtor or creditor.”
“ § 35. The chief officer of this department shall be called the comptroller of the city of Mew York.”
“ § 32. The head of all departments, except as otherwise specifically directed herein, shall have power to appoint and remove all chiefs of bureaus (except the chamberlain), as also all clerks, officers, employés, and *27 subordinates in their respective departments. The number of all officers, clerk, employés, and subordinates in every department (except the police and fire departments), with their respective salaries and compensations, shall be such as the head of each department shall designate and approve, except that the. aggregate expense thereof shall not exceed the total amount duly appropriated by law to each department for such purposes.”
The same act further provides in section 120 that “all acts or parts of acts inconsistent with the provisions of this act are also hereby repealed.”
By the language of this act the comptroller is made the head of the department of finance, with full control and responsibility in respect to the fiscal concerns of the corporation, and with power to appoint and remove all clerks, officers, employés and subordinates, and chiefs of bureaus, except the chamberlain, in his department. While the language of the act thus clearly empowers the comptroller to appoint the deputy chamberlain, it remains to be seen whether that language fails to express the intention of the legislature, as is claimed on the part of the plaintiff.
It is urged by the plaintiff that the act of 1866 has been until now acted upon as if still in force, and that in the absence of the chamberlain, however temporary, the deputy has the custody and control of millions of the public money, and that this claim of power by the comptroller to appoint the deputy chamberlain takes away from the chamberlain the control over and custody of the public moneys.
It is also insisted that the chamberlain and all the employés in his office should be entirely independent of the comptroller, and therefore the laws of 1866 and 1870 together provide that the chamberlain should be appointed by the mayor, and hold his office for a definite period, and his subordinates should be ap *28 pointed by him and hold office during his pleasure, and that to confer upon the comptroller the power to appoint either the chamberlain or his subordinates would effectually destroy that system, and would give to the comptroller power over the public funds far beyond that expressly given to him in the language of any statute.
It is further urged on behalf of the plaintiff that this theory that the chamberlain and his employés should be independent of the comptroller, is so just and so in accordance with the general legislation of the state in • respect to local governments, that the legislature could never have intended that the chamberlain, with his liabilities for the custody of the public moneys, should be without the power to appoint his deputy and clerks. In order to determine whether the plan was so just and wise that the legislature in 1870 must be deemed not to have intended to change it, we may look at the history of its operation. From 1857 until the passage of the act of 1866 the chamberlain was without power to appoint his subordinates. Since then he has exercised that power, but it does not appear that such exercise of power by the chamberlain and independence on his part of the comptroller, has, during the latter period, been accompanied with any such advantages to the city and county in respect to the preservation and cpstody of the public moneys, that the legislature cannot be deemed to have intended to make the change expressed by the language of the act. The papers on the appeal fail to show any such beneficent results accruing from the' increase of power to the chamberlain under the act of 1866 that would justify the presumption that the lawmakers did not intend to repeal it. As far as can be gathered from the statute itself or from these extrinsic circumstances, it is difficult to discover that the intention of the legislature was that claimed for it by the plaintiff.
*29 Neither does the claim that the comptroller, after the passage of the act of 1870, acquiesced in the exercise of the appointing power by the chamberlain, or that the loss of it would increase his responsibility, oj diminish his control of the public moneys, shed any light upon the intention of the legislature. The acquiescence of the comptroller in the exercise of this power by the chamberlain can in no way serve to interpret or give construction to the statute, the language of which is clear, and which for anything that is apparent is such as will best protect the public, however much it may increase the responsibility of the custodian or affect the control of the public funds. It may have -been the promptings of wisdom, enlightened by the experience of the past, that guided the action of the legislature in conferring upon the comptroller the power of appointing the deputy in the chamberlain5 s office.
Occasions may arise when the public treasury will be better protected by the exercise of this power on the part of the comptroller than by leaving it entirely in the keeping at any time of subordinates of the chamberlain’s own creation, and it is difficult to sustain the proposition that the statute must be construed upon the basis that the legislature never could have had these contingencies in view, and never intended to provide against them.
It is suggested that the provision in the second paragraph of the thirty-second section of the act of 1870, which directs that the salaries of all those officers, clerks and subordinates, that are to be appointed by the heads of departments shall not exceed the total amount duly appropriated by law to each department for such purpose, is inconsistent with the law previously and still in force, directing that the salaries of the deputy and clerk in the chamberlain’s office shall be paid by the banks in which he is required to deposit the public moneys; and that, therefore, the chamberlain’s deputy *30 and clerks were not intended by the legislature to be included among those officers whom the comptroller was authorized to appoint.
It is not easy to see any inconsistency when this provision of law directing'' the payment of the salaries of the chamberlain’s deputy and clerks by the banks which are the depositories of the public funds, is itself viewed as an appropriation. This action of the legislature is simply an appropriation of a portion of the interest money belonging to the public, and accruing upon the public money from the deposits of it with the banks, in accordance with the law. The ordering of the payments of these salaries by the banks from these interest moneys due by them to the public, is an appropriation to that extent towards the total amount appropriated by law to the department of finance, and is an appropriation from that part of the public money of the amount of those salaries, and so far from there being any inconsistency in the action of the legislature, it seems, viewed in this aspect, to harmonize with the theory that the intention of the legislature is best indicated by the language it employed, and that this language was that which was best calculated to guard the public treasury.
The State may impose onerous duties and great liabilities upon its public servants, but that is not an element for consideration in giving construction to a statute. The State always keeps open another avenue for their relief.
It was justly stated by the learned judge at Special Term, that this is the personal action of the plaintiff as an individual, and can be maintained upon no other theory than that he is entitled, upon the facts set forth in the complaint, to relief by way of injunction as a matter of private and personal right, and that the right of the plaintiff to an injunction is not to any extent founded upon the allegation in the complaint of the appointment of Walter B. Palmer as deputy chamberlain, *31 but that the 'important question in the controversy is, whether the defendant is the deputy chamberlain, as it constitutes the sole ground of his defence by way of justification. It is to this question these considerations relate, and if the conclusions arrived at as to the constructions to be given the statutes are correct, they justify the defendant in presenting Ms claim, and demanding that he be allowed to enter upon and discharge the duties of the office. But as the defendant claims an office which is already and has been for a long time in the possession of a person who is de facto discharging its duties under color of title, he should, as such claimant, establish his right by due course of law. The steps for him to take are indicated in the Code, sections 433 to 438, and he has no right to seek redress by any force or violence. Any attempt of that nature would be unlawful, and is to be repelled by all lawful means. The very existence of society is dependent upon the maintenance of this principle.
It does not appear by the papers that there has been any resort to force or any threats of resorting to force by the defendant, or that he has taken any other course than such as he might lawfully take in presenting a claim and demanding its allowance by a party in adverse possession.
The law is to be presumed strong enough to protect a party that is in possession of an office, and discharging its duties under color of title, from forcible ouster by a claimant who refrains from seeking to establish his alleged rights by due process of law. An injunction should not be granted upon the suspicion of the incumbent that he may be forcibly ousted. Such a precedent is undesirable.
In the present case it does not appear that there is any just reason to fear that force will be resorted to by the defendant, or that the law is not strong enough to restrain and punish such an act.
*32 The defendant claims that the injunction order appealed from restrains him, among other things, from discharging the duties of the office, even if he should establish his right to it by law, and such a construction may be-given to it, but on the argument the plaintiff’s counsel waived any such claim. Still, in the view here taken, there is no necessity for the injunction, and the order appealed from, allowing it, should be reversed, with costs to the defendant.